IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| **RATEB M. ABU-EID** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No:_____ |
| | ) | |
| **DISCOVER PRODUCTS, INC.** | ) | |
| | ) | |
| f/k/a Discover Financial Services | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Rateb M. Abu-Eid, by and through counsel, brings this Complaint against Defendant Discover Products, Inc. ("Defendant" or "Discover") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. As a long-time employee of the Nuclear Regulatory Agency, Mr. Abu-Eid was well aware of how important it is for government employees with security clearances to manage their financial affairs responsibly. When he realized that a number of small balance, defaulted, and charged-off accounts were appearing on his credit file, he did what he could to have the erroneous data corrected. One of these inaccurate and fraudulent accounts was reported by defendant Discover. Despite the fact that Discover had no documents or evidence to verify that Mr. Abu-Eid opened and used this credit card account, its employees repeatedly verified that the account was Mr. Abu-Eid's responsibility. It is reasonably believed and suspected that the disconnect with Discover is the result of an intentional decision to ignore the clear language of the FCRA as well as the case law that has interpreted it. Instead of training its employees to delete accounts that consumers were disputing on the grounds that they were opened as the result of identity theft, it is

reasonably believed that Discover trained its employees to do the exact opposite: verify that the account that belonged to the disputing consumer unless the consumer can prove otherwise. Not only did the processors lack any facts or documents to prove exactly who opened this account over the internet, but there were multiple red flags and indicia of identity theft that these processors had to consciously ignore to verify that it belonged to this plaintiff: the original email address that Discover had for this account was not legitimate, an attempt was made to change the account contact information early after opening, and Discover's reversal of the only payment made resulted in the account being a first payment default. While each of those factors may not definitively prove that an account was identity theft related, they are consistent with fraudulently opened accounts. Not only did Discover's employees fail to delete and correct this unverifiable account, but they consistently failed to report the proper compliance condition code to notify the CRAs that Mr. Abu-Eid was disputing the accuracy of the account information. Accordingly, Mr. Abu-Eid requests an award of actual damages, statutory damages, punitive damages, attorney's fees, and costs based upon Discover's violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq.*

**Parties**

2. Plaintiff Rateb M. Abu-Eid is a natural person and a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Rateb M. Abu-Eid.

3. Defendant Discover Products, Inc., fictitiously known as Discover Financial Services is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more

consumer reporting agencies about consumer transactions or experiences with any consumer. Discover maintains the office of a registered agent in the Commonwealth of Virginia.

### Jurisdiction & Venue

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction and division as the Defendant is subject to personal jurisdiction in the Eastern District of Virginia, Alexandria division, by virtue of the business that it has conducted within the division. Because the Defendant is subject to personal jurisdiction in the district and division, venue is proper in this Court. Discover regularly furnishes information to credit reporting agencies regarding consumers that reside in the Commonwealth of Virginia.

### Factual Allegations

5. Discover was reporting that Mr. Abu-Eid had defaulted on a credit card with it, but Mr. Abu-Eid knew that he had not ever opened or had a Discover card. At or around the same time that he discovered the fraudulent Discover card on his credit file, Mr. Abu-Eid learned that other accounts were being attributed to him as well. Mr. Abu-Eid became concerned that he was the victim of identity theft and that someone had used his identity to open these fraudulent accounts. Mr. Abu-Eid's adult son who had a similar name (Mohammad Rateb Abu-Eid) was involved in serious auto accident that affected his memory, caused brain damage, and would have also made it easier for someone to take advantage of him. Mr. Abu-Eid did not know who opened the accounts, but considered the possibility that his son might have been involved in some way.

6. Mr. Abu-Eid began disputing various identity theft related accounts in January 2019, and the situation escalated in May 2019 when he received notice from his employer that his security clearance was in jeopardy because of these defaulted accounts including the Discover account. Mr. Abu-Eid reasonably feared that he could lose his security clearance and lengthy career with the Nuclear Regulatory Agency if he did not resolve the problems with this account, so he began sending credit dispute letters to the CRAs.

7. On May 29, 2019, Mr. Abu-Eid sent a written credit dispute letter to the various credit reporting agencies that disputed the inaccurate Discover account on his credit report. Mr. Abu-Eid's letter stated that he did not open or initiate the Discover account and requested the investigation with deletion of the defaulted Discover account from his credit files. The letter clearly identified the very problem that Discover would ignore on every ACDV response, the Discover account was not opened in his name. The letter identified Mr. Abu-Eid's son's name, which is similar and stated his concerns about the accounts as follows, "I think they are related to my son who has a similar name…These accounts are not my accounts and they need to be removed." Accordingly, Mr. Abu-Eid put Discover on actual notice of the fraudulent activity and identified who he thought might be involved.

8. Equifax, Experian, and TransUnion each received the Plaintiff's credit dispute letter and issued ACDVs to Discover. Equifax issued the ACDV on June 6, 2019, TransUnion on June 7, 2019, and Experian on June 11, 2019.

9. On June 25, 2019, Matthew William on behalf of Discover responded to the Experian ACDV. Based upon documents obtained from Experian, it attached a copy of the Mr. Abu-Eid's dispute letter to the ACDV and notified Discover that the account may belong to another individual with the same name such that Discover should investigate the

complete identification for the account. This instruction coupled with the contents of the credit dispute letter attached to the ACDV left no doubt that Discover should investigate if the name on the disputed account matched exactly to Rateb Abu-Eid's name. Discover failed this most basic of investigations because the account name in its records was Mo Rateb M Abu-Eid which did not match the Plaintiff's. Despite the different name on the account, Discover verified that the account was the Plaintiff's responsibility and that he was responsible for the charged off balance of $2,020.

10. The next day, on June 26, 2019, Daintry Gallimore responded to the ACDVs issued by Equifax and TransUnion. Both ACDVs attached Mr. Abu-Eid's dispute letter with the Equifax ACDV instructing the investigation for true identity fraud because of fraudulent account opening and the TransUnion ACDV instructing the investigation of complete identification because the account may belong to another individual. Collectivly these two ACDVs put Discover on actual notice that this account was being disputed as fraudulently opened and that it should conduct a serious inquiry to determine if it had adequate evidence to verify that it really did belong to Mr. Abu-Eid.

11. As to the Equifax ACDV, Ms. Gallimore verified that the account should remain on the Plaintiff's credit account despite the fact that she had a different name on the account. In addition, if she had reviewed the internal Discover records available related to the Discover account, she would have seen that Discover did not have a signed application, that the account lapsed into first payment default and proceeded to charge-off. The immediate run up of a balance on a newly opened credit card account followed by default, is one of the indicia of identity theft. In addition, Discover issued a letter in the account file that a provided email address for communication of statements was a bad email

address. This bad email address did not match the email address provided at the account opening, and it was not the Plaintiff's actual email address. Finally, someone tried to change the address for the card and obtain a new card to use, which is another indicium of someone trying to cover up the tracks of an identity theft. Given the fact that account name did not match and all of the other indicia of identity theft, Discover should have deleted the account for fraud pursuant to the Equifax ACDV. If Discover had taken this action, it likely would have solved Mr. Abu-Eid's problem because the credit reporting agencies notify each other if one credit reporting agency deletes an account for fraud as part of a fraud referral process. Discover's failure to conduct a thorough and reasonable investigation of identity theft was negligent and reckless given the available account level information including the lack of reliable account level information.

12.   As for the TransUnion ACDV, when Ms. Gallimore responded on June 26, 2019, she reported on the ACDV that the account had a different first, middle, and last name. Given the attached dispute letter and the ACDV's instruction to provide complete identification and that the account may belong to an individual with a similar name, only a negligent and reckless investigation would result in the verification of the account. In light of the fact that credit card companies do not utilize reasonable security protocols to open new accounts on line, do not obtain wet ink signatures on applications, and do not require applicants to scan and send copies of identification documents before opening accounts, they know full well that these accounts were unverified when opened. Once a consumer disputes the account pursuant to the provisions of the FCRA, these companies cannot continue to blindly verify that the account was accurate after receiving actual knowledge of the asserted fraud. Despite all the obvious barriers to possible verification, Ms.

6

Gallimore blindly and recklessly verified that the account was opened by and belonged to this plaintiff.

13. Given the totality of the disputes from the various credit reporting agencies, Discover damaged Mr. Abu-Eid by not instructing the deletion of the account from his credit reports either because the account name on the records did not match the account name on the ACDVs or because of identity theft. Discover's actions were a substantial factor in Mr. Abu-Eid's distress damages including those related to his inability to use his credit and concerns over a loss of his security clearance.

14. Because Discover failed to conduct any sort of reasonable initial investigation, Mr. Abu-Eid sent another credit dispute letter to the credit reporting agencies in July 2019. By the time of that dispute the CRAs had removed some of the other disputed accounts that were not his, but they allowed the Discover account to remain on the credit file, because Discover had verified the account to all three credit reporting agencies in the first written dispute letter process. Mr. Abu-Eid's second credit dispute letter described the fact that he believed that the accounts may have been opened by his son Mohammad Rateb Abu-Eid, who lives with him. Mr. Abu-Eid's letter made it clear that he did not open or use the Discover account and requested the immediate deletion of the account from his credit file.

15. On August 14, 2019, Katelyn Bond on behalf of Discover responded to an ACDV that Equifax issued on July 27, 2019. Equifax had instructed Discover to investigate the account for true identity fraud and attached a copy of Mr. Abu-Eid's dispute letter which included a copy of his Virginia's drivers license. In response, Ms. Bond said that the disputed information was accurate, but she identified the name Mo Rateb M Abu-Eid as the name on the account. The dispute letter specifically identified this as the Plaintiff's

son's name, which was also the name on the account when opened. Ms. Bond's investigation was unreasonable, negligent, and reckless because the account level documentation was devoid of any proof that Mr. Abu-Eid had anything to do with opening the account. Not only was there no indicia of reliability from this on line initiated account, Discover's reversal of the first payment made on the account resulted in a first payment default, the email addresses provided at the account initiation were unreliable, and someone tried to change the address and get a new card after the account was opened. All of these events would alert a company with any sort of reasonable fraud investigation procedure to examine and consider its records carefully. Discover did not do so and appears to have conducted a mere data conformity review such that it just reported the information that was in the electronic record without any true investigation of actual account level documents.

16. On August 14, 2019, Katelyn Bond also responded to an ACDV that Experian had issued on July 31, 2019. The Experian ACDV also included and attached a dispute letter so that Ms. Bond could review the Plaintiff's precise complaint. As with the other ACDVs, Discover simply said that the disputed information was accurate while at the same time reporting a different name for the account, Mo Rateb M Abu-Eid. As with the other responses, this was no meaningful investigation because the account records demonstrated that the account was not opened in the Plaintiff's name and that there was no evidence that Mr. Abu-Eid opened or initiated the account.

17. On August 16, 2019, Nancy Fancher responded to an ACDV that TransUnion issued on July 24, 2019. TransUnion's ACDV also included an attached image, stated that the consumer dispute included that the account was fraudulently opened, and specifically noted in the consumer message section, fraudulently opened by son MOHAMMAD

RATEB ABUEID." Ms. Fancher responded that the name on the account was "MO RATEB M ABU-EID" which was virtually identical to the name that TransUnion specifically instructed Discover to investigate as identity fraud. Moreover, Ms. Fancher would have also had to ignore the account records that showed Discover had no signed application, the account was immediately run up to the credit limit with no payments that were actually paid, the email addresses for the account were fraudulent, and that someone tried to change the address for the account and order a new card after the account was opened. Only a negligent and reckless investigation would report to TransUnion that this account was Mr. Abu- Eid's responsibility and that it should appear on his credit report.

18. In November of 2019, Mr. Abu-Eid needed to move forward with his attempt to refinance his mortgage. He contacted Quicken Loans, and it acquired his consumer credit report on November 7, 2019. Discover reported on November 7, 2019 that Mr. Abu-Eid's account was still rated a charge off with a past due balance of $2,020. This account was a substantial factor in Mr. Abu-Eid's inability to obtain credit from Quicken Loans in the amount and on the terms that he otherwise would have qualified to receive.

19. On January 21, 2020, Discover had two more chances to instruct Experian and Equifax to remove the identity theft related Discover account. Additional information is necessary as to who responded to the Experian ACDV, but Discover's employee instructed Experian that Mo Rateb M Abu Eid was the name on the account and verified that the account should remain on the Plaintiff's credit file when it responded to Experian on January 21, 2020. Just as it had done before, Discover's processor ignored the information in its files that demonstrated that the account was opened by an identity thief. Experian specifically told Discover to conduct a true identity theft investigation and that

"CONSUMER CLAIMS SON MOHAMMAD RATEB EBU EID HAS SAME NAME SAME ADDRESS MAY BELONG TO HIM OR IDENITY THEFT." Discover once again ignored the extensive indicia of identity theft in its records including that the name on the account did not match Plaintiff's but was very close to the son's name, the email provided at account opening was not valid, the email provided as part of any attempted payment was not valid, the only payment attempted was returned unpaid, the account was immediately charged up to the credit limit with a first payment default, and that someone tried to change the address for the card and obtain a new card. All of these factors are strong indications of identity theft, Discover simply conducted a reckless investigation and allowed the account to remain on Plaintiff's credit file.

20. Discover responded on January 21, 2020 to an ACDV that Equifax had previously issued. Equifax notified Discover that the account was being disputed as true identity fraud and that the account may have been fraudulently initiated. Krista Abbott responded to Equifax that the account records for Discover contained a different name and that the account had a charge-off in the amount of $2,020. Just as with previous Discover investigations, numerous items in the account records prevented Discover from verifying the accuracy of the data and supported the fact that an identity thief may have opened the account such that Discover should have said the account should be deleted from the Plaintiff's credit file for fraud. As with previous investigations, if Discover had reported the account as a fraud deletion on the ACDV response, the CRA's fraud referral process would have resulted in the removal of the Discover account from all of his credit files.

21. Mr. Abu-Eid continued to feel the pressure of a needed refinance of his mortgage, so he once again attempted to obtain credit from Quicken Loans in February 2020.

However, the Discover account continued to appear on his credit file, and it was a substantial factor in his inability to obtain the mortgage refinance.

22. Discover's failure to accurately report the account on Mr. Abu-Eid's credit file was a continuing frustrating factor in his ability to refinance the mortgage on his residence. When Mr. Abu-Eid applied for mortgages and the credit reports were obtained, the defaulted Discover account would appear on his credit report, which frustrated his ability to obtain a refinanced mortgage. This caused additional frustration, upset, and anger for Mr. Abu-Eid because he had an account appearing on his credit report that he had disputed as identity theft related and was not opened in his name as demonstrated by the records retained by Discover.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. 1681 s-2(b)

23. Plaintiff incorporates paragraphs one (1) through twenty-two (22) as if fully stated herein.

24. Discover both negligently and willfully violated 15 U.S.C. §1681s-2(b) when it responded to ACDVs issued by Equifax, Experian, and TransUnion as alleged in the factual averments.

25. As to the ACDV responses, Discover did not conduct a reasonable investigation of the disputes in violation 15 U.S.C. §1681s-2(b) because no reasonable investigation would have resulted in allowing an account that was not opened in the Plaintiff's name continuing to appear on his credit. Moreover, Discover is believed to have known the account was opened electronically, and Discover has not produced any signed applications indicating that the Plaintiff opened or initiated the account. Discover also would have ignored and

failed to consider the information attached to the ACDVs by the credit reporting agencies, which is believed to include a copy of the Plaintiff's Driver's License and signature. Discover reasonably should have known that its own documents demonstrated this was not an account initiated by Plaintiff.

26. Based upon information and belief, Discover failed to train its dispute processors that handled Mr. Abu-Eid's disputes to comply with the requirements of §1681s-2(b) particularly with regard to accounts that were opened remotely through the internet. In the event that Discover lacked the information or documentation to verify that this Mr. Abu-Eid opened this account or determined that it would be too difficult to obtain such information, it had a duty to delete the unverifiable data. It is reasonably believed and suspected that Discover actually trained its processors not to follow the FCRA and caselaw that has interpreted §1681s-2(b). Instead of deleting trade lines that could not specifically be verified, it is reasonably believed that Discover trained its processors to verify trade lines unless the fraud department had determined that the accounts were opened due to fraud. Such training would constitute a reckless disregard for the FCRA and the consequences of said training.

27. The sheer volume of ACDVs and different employees that responded to the ACDVs does not indicate that Discover invests adequate resources in consumer dispute and fraud investigations. Numerous different Discover ACDV processors all allowed the account to remain on Plaintiff's credit file when the very basic name identification was a clear mismatch. This level of carelessness indicates no proper reinvestigation procedures exist or that no procedures are followed as part of the investigation after receiving an ACDV dispute.

28. Federal Circuit Courts have made clear that a furnisher of credit information has significant duties after receiving an ACDV from a credit reporting agency. The Fourth Circuit made clear in the *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004) that a furnisher must conduct a reasonable investigation of all its account records as part of its duties under §1681s-2(b). In addition, the Eleventh Circuit in *Hinkle v. Midland Credit Management., Inc.* 837 F.3d 1295 (11th Cir. 2016) issued a detailed opinion that the review of account level information like applications, account statements, and other documents are necessary items to review as part of a reasonable reinvestigation. The court in *Hinkle* made clear that if the furnisher could not verify that the data was accurate or determined that it would be too difficult to actually verify the accuracy of the data that it must delete the account data. Finally, Discover received specific notice of the nature of the Plaintiff's claim because it was told to investigate the account looking for Plaintiff's son's name, which was the very name associated with the account. The Sixth Circuit in *Boggio v. USA Federal Savings Bank*, 696 F.3d 611 (6th Cir. 2012) stated that given "the specific nature of Boggio's underlying dispute, a reasonable investigation would require that USAA review the relevant, underlying documentation." Discover has ignored these clear warnings and implemented an ACDV dispute investigation procedure that is reckless and in disregard to clear admonitions. The decision to totally ignore the fact that this was a disputed identity theft claims without any payments ever being made demonstrates that Discover totally disregards clear indicia of identity theft.

29. Discover also systematically and willfully violated the requirements of 15 U.S.C. §1681s-2(b)(1)(C) by failing to accurately report the results of its reinvestigation to the credit reporting agencies by failing to include a notation that Mr. Abu-Eid disputed the

credit reporting for the account when reporting the results of the credit dispute reinvestigation. On the ACDV responses, Discover had a duty to include an XB notation in the compliance condition code section of the ACDV. By not reporting Mr. Abu-Eid's account as disputed, Discover reported incomplete and inaccurate information in violation of 15 U.S.C. §1681 s-2(b)(1)(C). Despite clear guidance from the Fourth Circuit from the case of *Saunders v. Branch Banking & Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008) that failing to report a consumer's account as disputed when reporting the results of the reinvestigation results in a willful violation of the FCRA, Discover failed on multiple occasions to report that Mr. Abu-Eid disputed the status of the account and in fact the credit reports indicated that "DISPUTE RESOLVED REPORTED BY GRANTOR" was what Discover reported to the credit reporting agencies.

30. Punitive damages are required based upon Discover's reckless indifference for reporting complete and accurate credit information as well as investigating the status of disputed information as demonstrated by the factual averments including the key fact that the name that opened the account did not match the Plaintiff's name. Only substantial punitive damages can stop these credit reporting practices.

31. Plaintiff is entitled to actual damages, statutory damages, and punitive damages based upon the violations of the Fair Credit Reporting Act. Plaintiff suffered damages in the form of loss of time working to correct the reporting of the inaccurate account, the emotional distress of continuing to deal with problems related to the account, and denial and delay of credit opportunities to obtain a mortgage refinance.

## **Prayer for Relief**

Wherefore, the Plaintiff prays that the Court award the following relief:

a)     Actual damages based upon Defendant's violations of the FCRA;

b)     statutory damages against Defendant's based upon violations of the FCRA;

c)     punitive damages based upon the violations of the FCRA

d)     costs and reasonable attorneys' fees incurred by the Plaintiff;

e)     prejudgment interest

f)     all other further relief that this Court deems just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted
Rateb M. Abu-Eid

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11790 Sunrise Valley Dr. Suite 103
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582