IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RATEB M. ABU-EID,                          )
               Plaintiff,                )
                                     )
               v.                           )          Civil Action No. 1:20-cv-1450
                                     )
DISCOVER PRODUCTS, INC.,                   )
               Defendant.               )

## MEMORANDUM OPINION

At issue in this Fair Credit Reporting Act ("FCRA") case are the parties' cross motions for summary judgment. *See* Dkts. 56, 62. Also pending in this matter are (1) Plaintiff Rateb M. Abu-Eid's motion to strike the declaration of Michael Sanchez (Dkt. 71), (2) Defendant Discover Products, Inc.'s (hereinafter "Discover") motion to exclude the testimony of expert witness Evan Hendricks (Dkt. 74), and (3) Discover's motions to seal portions of the briefing on the pending motions (Dkts. 85, 124). These motions have all been fully briefed and argued orally, and are therefore ripe for disposition.

### I.

Before addressing the merits of the pending motions, it is appropriate first to summarize the factual and procedural history of this case.

Plaintiff works for the federal government and is required in the course of his work to maintain a national security clearance. In January 2019, plaintiff learned that his security clearance was at risk of being revoked because plaintiff's credit report showed that plaintiff had defaulted on numerous credit card accounts. Plaintiff alleges that he had no knowledge of these accounts and did not open them. Plaintiff investigated these accounts and learned that his credit report, which was compiled by credit reporting agencies ("CRAs") including Equifax and

1

TransUnion, was showing new credit card accounts that were in default. These accounts were all opened under the name "Mo Rateb M. Abu-Eid." Plaintiff's name, in contrast, is "Rateb M. Abu-Eid."

After learning of these new accounts, plaintiff sent written credit dispute letters to various CRAs in May 2019 and July 2019. In these dispute letters, plaintiff stated that he did not open the accounts in question and that the accounts had been opened using a name different from plaintiff's name. Plaintiff also explained in his credit dispute letters that his son, Mohammad Rateb M. Abu-Eid, likely opened the accounts using plaintiff's social security number. Plaintiff explained in his letter that his son's name closely resembled the name used to open the disputed accounts.

Plaintiff included photocopies of his drivers license with these credit dispute letters in an attempt to show the CRAs that his legal name is not the same as the name used on the disputed credit card accounts. The CRAs subsequently contacted various issuing banks (referred to as furnishers in the context of FCRA disputes because they furnish information about an individual's financial accounts to CRAs) and explained that the defaulted credit card accounts reported on plaintiff's credit report had not been opened by the plaintiff. These furnishers included Synchrony, Midland, Portfolio, and Discover.

After being contacted by the CRAs, each furnisher, as required by the FCRA, initiated an investigation into the purportedly fraudulent accounts. With the exception of Discover, all of the furnishers determined that the accounts had not been opened by plaintiff and the accounts were removed from plaintiff's credit report. Defendant Discover, however, investigated the purportedly fraudulent card but could not determine that the card was opened fraudulently. Accordingly, Discover declined to remove the account from plaintiff's credit report. Plaintiff

2

continued to submit disputes with various CRAs concerning the Discover account and eventually submitted a total of eight disputes concerning the Discover account. Discover investigated all eight disputes, which all concerned the same account, but determined after each investigation that the account should remain on plaintiff's credit report.

After Discover declined to remove the account, plaintiff initiated this suit. Plaintiff's November 2020 complaint alleges that Discover violated 15 U.S.C. § 1681s-2(b) of the FCRA by failing to conduct a reasonable investigation into plaintiff's disputes. This section imposes the duty on furnishers like Discover to conduct an investigation after receiving a credit dispute letter in which the furnisher must "review all relevant information" provided by the CRA. 15 U.S.C. § 1681s-2(b).  Plaintiff alleges that Discover's investigation was insufficient under the FCRA and that Discover's FCRA violation was both negligent and willful. The parties engaged in extensive discovery, including over fifty hours of deposition testimony and the exchange of numerous documents. On the factual record thus assembled, both parties have moved for summary judgment and both parties have also moved to exclude various pieces of evidence from the summary judgment record. Before resolving the motions for summary judgment, it is appropriate to address the parties' evidentiary disputes.

## II.

Plaintiff has filed a motion to strike the declaration of Discover's corporate representative, Michael Sanchez, who is a senior manager in Discover's credit dispute resolution team. Plaintiff's argument, distilled to its essence, is that the declaration should be stricken because it is not based on personal knowledge. This argument fails.

The parties in this case have engaged in extensive discovery, including the exchange of interrogatories and responses, the filing and argument of multiple motions to compel discovery

3

before the magistrate judge, and the conducting of over fifty hours of deposition testimony. Although Sanchez was not identified in Discover's Rule 26(a) disclosures as a witness with personal knowledge concerning plaintiff's case, Sanchez was designated by Discover as its Rule 30(b)(6) corporate representative to testify concerning Discover's general practices in resolving consumer credit disputes. Accordingly, plaintiff deposed Sanchez for nearly fifteen hours as Discover's Rule 30(b)(6) designated corporate representative. In addition to Sanchez's deposition testimony, Discover submitted a signed declaration from Sanchez in support of Discover's motion for summary judgment. Sanchez's declaration describes Discover's general practices for reviewing credit dispute claims and describes the procedures Discover's processors used in reviewing plaintiff's eight credit dispute letters.

In his motion to strike, plaintiff argues that the Sanchez declaration should be excluded for two reasons: (i) Sanchez lacks personal knowledge of the facts described in Sanchez's declaration and (ii) Discover failed to provide the information underlying Sanchez's declaration throughout the course of discovery and should be barred from relying on that evidence, pursuant to Rule 37(c)(1), Fed. R. Civ. P. As explained below, both arguments fail, and plaintiff's motion to strike Sanchez's declaration must be denied.

Plaintiff first argues that Sanchez's declaration should be excluded because Sanchez lacks personal knowledge of the fraud resolution procedures described in that declaration. In support of this argument, plaintiff points to Sanchez's deposition testimony, where Sanchez confirmed that he did not personally investigate plaintiff's claims of fraud, which were handled by other Discover employees. To be sure, Rule 56 requires that declarations used to support summary judgment must "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In this

4

respect, Rule 602, Fed. R. Evid, provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Plaintiff's argument fails, as plaintiff ignores the fact that a Rule 30(b)(6) witness testifies not on the basis of personal knowledge about a particular event but rather testifies as to a corporation's general polices, practices, and procedures. In this respect, the Fourth Circuit has instructed that "Rule 30(b)(6) deponents testify on behalf of entities, not themselves, and often do so based on careful advance preparation, not personal knowledge." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 193 (4th Cir. 2019); *see also Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006) (explaining that a Rule 30(b)(6) representative "does not testify as to his personal knowledge or perceptions... he testifies vicariously for the corporation, as to its knowledge and perceptions"). In sum, as a Rule 30(b)(6) designee, Sanchez was not testifying to his personal knowledge of a particular event, but instead was testifying on behalf of Discover as to Discover's general policies and procedures.

Nor is there any doubt that Sanchez, as Discover's Rule 30(b)(6) representative, is competent to testify and to provide a declaration concerning Discover's procedures for investigating consumer credit disputes and the steps Discover employees took to investigate plaintiff's disputes. In this regard, a review of Sanchez's declaration shows that Sanchez had the requisite knowledge and preparation to testify as a Rule 30(b)(6) representative. Sanchez properly reviewed relevant documents so that he could testify as a Rule 30(b)(6) representative on behalf of Discover. These documents include Discover's general policies for investigating claims of account fraud as well as the documents relating specifically to plaintiff's account. Indeed, a leading treatise on civil procedure confirms that preparation of a Rule 30(b)(6) witness "is not limited to matters of which the witness has personal knowledge, but extends to all

5

information reasonably available to the responding organization." WRIGHT & MILLER, FED.
PRAC. & PROC. CIV. § 2103 (3d ed. 2021). Sanchez's preparation was in accord with the
requirements of Rule 30(b)(6) that witnesses reviewing review policies and documents within the
possession of the corporation before providing testimony as a designated corporate
representation. It is irrelevant that Sanchez did not have personal knowledge of plaintiff's
account during the time that Discover was investigating it, because Sanchez properly obtained
this knowledge in the course of his preparation as a Rule 30(b)(6) designated representative of
Discover. As the Seventh Circuit has explained, a corporate representative "designated as a
witness under Fed. R. Civ. P. 30(b)(6)" is authorized by rule "to testify not only to matters within
his personal knowledge but also to 'matters known or reasonably available to the organization."
*PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894–95 (7th Cir. 2004) (quoting *Pugh v.
City of Attica, Ind.*, 259 F.3d 619, 627 n. 7 (7th Cir.2001)). Thus, Sanchez's declaration is
admissible notwithstanding his lack of personal knowledge about plaintiff's account and
Discover's investigation. Accordingly, plaintiff's argument that Sanchez's declaration should be
stricken for lack of personal knowledge must fail.

  Plaintiff also argues that Sanchez's declaration should be stricken because Discover
failed to disclose the information underlying Sanchez's declaration throughout the discovery
process. This argument is belied by the factual record in the case, which shows that plaintiff had
sufficient notice of the facts which formed the basis of Sanchez's declaration.  To prepare his
Rule 30(b)(6) declaration, Sanchez relied on "the business records relating to [plaintiff's
disputed] credit card account" as well as Discover's "policies and procedures and business
records relating to investigating disputes." Dkt. 68-1 at 2. These materials were all provided to
plaintiff throughout the course of discovery and through Discover's interrogatories, document

productions, and witness depositions. *See, e.g.*, Dkts. 68, 69 (documenting materials provided to plaintiff by Discover throughout the course of litigation). Thus, the facts on which Sanchez relied in preparing for his declaration were disclosed to the plaintiff during discovery, and plaintiff has not demonstrated any discovery violation by Discover which would warrant striking Sanchez's declaration.

Not only did plaintiff receive in discovery the documents on which Sanchez relied, but plaintiff also had ample opportunity to depose Sanchez as Discover's designated Rule 30(b)(6) representative. Indeed, a magistrate judge ruling on a prior discovery dispute in this case instructed plaintiff to use documents that plaintiff received from Discover and then interrogate Sanchez about those documents during a deposition. *See* Dkt. 68-3. Although plaintiff's counsel conducted a lengthy fifteen-hour Rule 30(b)(6) deposition of Sanchez, plaintiff's counsel failed to examine Sanchez on the Discover business records on which Sanchez relied in both his Rule 30(b)(6) deposition testimony and his declaration. Clearly, plaintiff's counsel had an ample opportunity to ask Sanchez about the documents Sanchez reviewed and thus plaintiff could have learned of the matters Sanchez discusses in his declaration. Yet plaintiff's counsel failed to do so, and the deposition transcript shows that plaintiff's counsel never pursued that line of questioning, focusing instead on Sanchez's minimal personal involvement with plaintiff's account. Dkt. 68-6. Plaintiff's failure to explore Sanchez's testimony via deposition cannot serve as a basis to preclude Discover from relying on Sanchez's declaration at this time. Thus, plaintiff's motion to strike Sanchez's declaration must be denied.

### III.

Also pending in this matter is defendant's motion to exclude from trial and the summary judgment record the testimony and report of Evan Hendricks, a witness retained by plaintiff to

7

testify as an expert on consumer finance. Discover argues that Hendricks is not qualified to render an expert opinion, that Hendricks did not use a reliable methodology in formulating his opinions, and that Hendricks' opinions will not be helpful to the trier of fact. Discover is wrong on all three counts.

Hendricks is a consumer finance professional who has completed FCRA training offered by the National Credit Reporting Agency. Hendricks has authored numerous articles and book chapters on industry standards in credit reporting, and he has served as a board member for various professional organizations in the consumer credit and finance sector. Hendricks has also testified as an expert witness on consumer finance in dozens of federal court cases, including several in this district, and his testimony has also been cited with approval by the Fourth Circuit. *See Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 248 (4th Cir. 2017). Hendricks generally testifies as to FCRA compliance, industry standards for furnishers investigating credit disputes, and the impacts of incorrect information on consumer credit reports.

The standard for the admissibility of expert testimony is well-settled and does not require extensive elaboration. Rule 702, Fed. R. Evid, permits expert testimony if that testimony is (1) helpful to the jury in understanding the evidence or determining a fact at issue, (2) "based on sufficient facts or data," (3) "the product of reliable principles and methods," and (4) the product of a "reliabl[e] appli[cation] of th[ose] principles and methods to the facts of the case." Fed. R. Evid. 702. As the Fourth Circuit has recently emphasized, "Rule 702 thus 'imposes a special gatekeeping obligation on the trial judge' to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017)). In order to ensure that expert testimony is reliable, a district court must ensure that the proffered

opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

Hendricks' analysis and conclusions have been proffered via an expert report (Dkt. 76-1) and defendant also deposed Hendricks. Discover has moved to exclude Hendricks' disclosure and testimony altogether, arguing, *inter alia*, (i) that Hendricks is unqualified to render any opinions in this case, (ii) that Hendricks did not rely on sound methodology, and (iii) that Hendricks' opinions will not aid the trier of fact. Each contention fails, and is addressed in turn below.

Discover first argues that Hendricks' testimony should be excluded because Hendricks is not qualified as an expert on consumer finance and is thus not an expert on the topics on which his report opines. This argument is largely, though not entirely, without merit. The Fourth Circuit, along with scores of federal district courts, have recognized that Hendricks is qualified as an expert on consumer financial credit and can "testify about the legal standard to which furnishers of credit information are held under the FCRA." *Daugherty*, 701 F. App'x at 254.[1] It is apparent, therefore, that Hendricks is qualified to opine on topics including: (i) standard industry practices for reporting and investigating complaints about consumer financial data, (ii) the adequacy of Discover's procedures used to investigate plaintiff's complaints, and (iii) the types

___

[1] *See also Cramer v. Equifax Info. Servs.*, No. 4:18-CV-1078 CAS, 2019 WL 4468945, at *3 (E.D. Mo. Sept. 18, 2019) (ruling that Hendricks is qualified to "testify about the relevant industry practices for reporting and investigating consumer credit data"); *Anderson v. Equifax Info. Servs.*, LLC, No. 2:16-CV-2038-JAR, 2018 WL 1542322 (D. Kan. Mar. 29, 2018) (finding that "Hendricks is qualified to testify about Defendant's policies within the context of policies of other CRA and the credit reporting industry"); *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1366 (N.D. Ga. 2017) (holding that Hendricks is "qualified to talk about damages typically suffered by victims of credit reporting inaccuracies").

of damages typically incurred by individuals who suffer from credit reporting inaccuracies.[2]

Discover also argues, however, that Hendricks has no expertise as to the national security clearance process, and that his opinions as to any damages plaintiff might suffer regarding his security clearance are therefore inadmissible. This argument is correct, and plaintiff does not address this argument in his memorandum opposing Discover's motion. *See* Dkt. 103. Neither Hendricks' expert disclosure nor Hendricks' deposition testimony identify any expertise regarding the national security clearance process or the consequences of losing a security clearance, and there is thus no basis to conclude that Hendricks is qualified to render an opinion as to any risk that the presence of the Discover account on plaintiff's credit report posed to plaintiff's security clearances. Accordingly, the portions of Hendricks' testimony relating to potential damages caused by plaintiff's potential loss of his national security clearance will be excluded from the record and may not be offered at trial.[3]

Discover next argues that Hendricks' opinions are not based on a sufficiently reliable methodology and should therefore be excluded. This argument is unpersuasive. As explained above, numerous other courts have ruled that Hendricks' opinions as to industry standards and the adequacy of FCRA investigation procedures are reliable, relevant, and admissible. Discover

---

[2] Plaintiff concedes, as he must, that Hendricks may not testify about the precise severity or exact damages plaintiff suffered as a result of Discover's alleged failure to investigate because Hendricks does not have knowledge of plaintiff's actual damages and Hendricks is not qualified to testify about the severity of damages that plaintiff incurred. *See* Dkt 103 at 8. Instead, Hendricks may only testify as to the types of damages typically incurred due to inaccurate credit reporting.

[3] Hendricks may not testify about the effect of erroneous credit information on the national security clearance process, as Hendricks is not qualified as an expert on the national security process. Nonetheless, if the trial evidence demonstrates that plaintiff did lose his security clearance as a result of the erroneous credit report information from Discover and that the loss of security clearance caused plaintiff to lose his job, Hendricks may testify as to the actual financial damages incurred by plaintiff due to his loss of employment.

essentially argues that because Hendricks did not perform any tests, but instead compared record evidence about Discover's investigation practices with industry standards, Hendricks failed to employ a methodology. This argument fails, as Hendricks has provided a more than adequate explanation that his extensive professional experience qualifies him to evaluate how a company's financial investigation procedures compare to industry standards. Indeed, a federal court in New Jersey recently rejected identical arguments concerning Hendricks' testimony, explaining that "Hendricks [is] capable of opining on the issues of general privacy background and standards relating to acceptable, industry-standard practices." *Littlejohn v. Solar*, No. 1:16-CV-9446-NLH-JS, 2020 WL 2520418, at *4 (D.N.J. May 18, 2020). Here, Hendricks examined myriad documents relating to Discover's policies as well as documents relating to plaintiff's account. Hendricks adequately relied on these documents, along with Hendricks' FCRA expertise and knowledge of standard industry practice, to offer an opinion that the procedures Discover employed fell short of the industry standard for investigating allegations of credit card fraud and thus failed to qualify as a reasonable investigation under the FCRA.

Discover further argues that Hendricks' testimony will not assist the trier of fact because Hendricks' opinions do not require specialized knowledge and will not assist the jury. This argument is plainly unpersuasive. Hendricks' proposed testimony discusses standard industry practices for investigating reports of fraudulent credit card activity and the ways in which Discover's practices fell short of standard industry practices. This is precisely the type of specialized knowledge that will assist the jury in evaluating the evidence in this case, as ordinary jurors cannot reasonably be expected to know standard industry practice in this area. Further, this information is helpful in determining whether, as plaintiff has alleged, Discover's practices are

so inadequate as to qualify as a willful violation of the FCRA.[4] Thus, Discover's argument in this respect fails.

Discover also argues that portions of Hendricks' testimony impermissibly speak to Discover's motivation for adopting certain policies. For example, Discover takes particular issue with the portions of Hendricks' testimony that Discover "knew" its actions would have a negative impact on plaintiff and that Discover's procedures were in fact "a search for excuses to continue parking the fraudulent debt on Plaintiff's credit cards." Dkt. 76-1 at 8. These portions of Hendricks' testimony are not, as required by Rule 702, Fed. R. Evid., "based on sufficient facts or data." Hendricks may testify as to why a policy is typical in the credit reporting industry, but Hendricks may not speculate as to Discover's rationale for implementing a particular rule. Thus, Hendricks may not opine as to what Discover knew or what Discover's motivations were, as Hendricks does not know this information and is no more qualified than members of the jury to opine on these issues.

Discover finally argues that Hendricks' conclusions that Discover's policies were not reasonable under the FCRA should be excluded because these conclusions usurp the function of the jury. This argument is precluded by binding Fourth Circuit precedent involving the testimony of this same expert witness (Hendricks) in a case involve the same statute (the FCRA). In permitting Hendricks to testify as to the reasonableness of a furnisher's policy in light of the FCRA, the Fourth Circuit explained that "[r]easonableness is a subject on which experts

---

[4] Hendricks will be permitted to testify as to standard industry practices concerning FCRA compliance. In the course of this testimony, Hendricks may of course refer to the FCRA, but his testimony may not involve opinions about the legal requirements of the FCRA. In this regard, the Fourth Circuit has explained that "[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). The jury will be instructed as to the legal requirements of the FCRA at the end of the trial via jury instructions, and it is inappropriate for Hendricks to testify as to what the law requires.

routinely testify." *Daugherty*, 701 Fed. App'x at 255. Further, the Fourth Circuit explained that Hendricks' testimony in that case, as in this case, "addressed the reasonableness of [defendant's] conduct in light of the regulatory framework of the FCRA" and thus "did not draw legal conclusions." *Id.* Accordingly, Hendricks will be permitted to testify as to the reasonableness of the procedures Discover implemented to investigate allegations of fraudulent credit card activity.

In summary, Discover's motion to exclude Hendricks' testimony will be granted in part and denied in part. The motion to exclude will be denied in part insofar as Hendricks will be allowed to offer an opinion regarding the reasonableness of the procedures Discover used and investigations Discover conducted with respect to plaintiff's complaints. Hendricks will also be allowed to offer an opinion regarding industry standards for investigating complaints about consumer financial data and whether the investigations Discover undertook met industry standards. Hendricks will also be allowed to offer an opinion about the types of damages typically incurred by individuals who are subject to credit reporting inaccuracies, provided that during trial plaintiff provides evidence that he incurred these types of damages or is likely to incur these types of damages. The motion to exclude will be granted insofar as Hendricks will not be permitted to testify as to: (i) Discover's purpose for adopting certain policies and procedures and (ii) the effect of erroneous credit report information on the national security clearance process.

## IV.

The next matters for consideration are the parties cross-motions for summary judgment. Both motions must be denied, as Rule 56 provides that summary judgment shall be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *accord Boone v. Everett*, 671 F.

App'x 864, 865 (4th Cir. 2016). To serve as a bar to summary judgment, facts must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, courts must "view the evidence in the light most favorable to...the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Here, genuine factual disputes abound, and summary judgment is unwarranted and inappropriate. For example, the parties dispute the precise steps Discover's employees took in investigating plaintiff's various credit disputes. *Compare* Dkt. 63 at 10 (Discover alleging that its employees "reviewed the information provided in the dispute, including Plaintiff's dispute letters") *with* Dkt. 79 at 9 (plaintiff alleging that "the file notes do not state" that the employees read the dispute letters). Given the numerous disputes as to issues of material facts, summary judgment is inappropriate on this record and both motions for summary judgment must be denied.

Moreover, summary judgment in this case is also inappropriate because both parties seek, via summary judgment, a determination whether Discover's procedures were reasonable under the FCRA. For example, Discover argues that the record demonstrates that as a matter of law Discover's procedures were reasonable under the FCRA. *See* Dkt. 63 at 1. In contrast, plaintiff argues that the record shows without dispute that Discover's procedures were unreasonable under the FCRA. To be sure, the question of reasonableness is generally inappropriate for summary judgment, and courts considering whether a furnisher's investigation procedures are reasonable under the FCRA routinely explain that "[w]hether a defendant's investigation is reasonable [under the FCRA] is a factual question normally reserved for trial." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *see also Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016). Yet in rare circumstances courts have granted summary

14

judgment on FCRA reasonableness grounds where "the reasonableness of the defendant's procedures is beyond question." *Westra*, 409 F.3d at 827. For example, if the record evidence shows that a furnisher conducted no investigation whatsoever, then no reasonable jury could find that the furnisher acted reasonably under the FCRA. On the other hand, if the record evidence showed that the furnisher conducted an apparently thorough investigation and the consumer-plaintiff did not identify what the furnisher should have done differently, then no reasonable jury could find that the furnisher acted unreasonably. Neither of these circumstances is present here, summary judgment is inappropriate for both parties, and thus both motions for summary judgment must be denied

## V.

Also pending in this matter is Discover's motion to seal exhibits related to Discover's claims processing procedures, which Discover maintains are confidential and proprietary commercial information. *See* Dkt. 124. Discover previously moved to seal several exhibits in this case in their entirety, and that request was denied by an Order issued August 18, 2021. *See* Dkt. 121. Discover's renewed motion seeks only a partial redaction of those documents and in support of the renewed motion, Discover provides an additional explanation why partial redactions are necessary to protect Discover's confidential commercial information.

There is a "presumption of access accorded to judicial records." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). However, "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion." *Rushford*, 846 F.2d at 253. In this respect, Local Rule 5 requires that a party seeking leave to file exhibits under seal file a brief to describe the material to be filed under seal and explain why sealing is necessary. E.D. Va.

Loc. R. 5.

Discover maintains that the exhibits it seeks to redact, all of which involve deposition testimony from Discover employees discussing Discover's procedures for analyzing reports of fraudulent credit card activity, involve proprietary information suitable for filing under seal. A review of Discover's proposed redactions shows that these redactions are narrowly tailored to discussions of Discover's sensitive commercial information and that these redactions are not overbroad. A prior Order issued August 18, 2021 (*see* Dkt. 122) granted Discover's request to file under seal a document detailing Discover's step-by-step procedures in investigating credit disputes. All of the deposition excerpts that Discover now seeks place file under seal relate to the implementation of that documents, and thus sealing is appropriate. For the foregoing reasons, Discover's motion for leave to file under seal will be granted.

An appropriate Order reflecting the issues in this Memorandum Opinion will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
March 8, 2022

T. S. Ellis, III
United States District Judge